[Civ. No. 8011. Third Dist. Feb. 1, 1952.]

VERA F. FOUNTAIN et al., Respondents, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, Appellant.

Johnson & Davies and O'Hara, Randall, Castagnetto & Kilpatrick for Appellant.

Belli, Ashe & Pinney and Taft, Wright & Hopkins for Respondents.

VAN DYKE, J.—Plaintiffs-respondents brought this action for personal injuries and property damage, suffered in an automobile collision between a Packard automobile operated by the plaintiffs and a Plymouth automobile operated by Margaret Meyers, who was killed in the collision. The Plymouth had been owned by Thomas J. Cartner until his death on December 11, 1946. By his will it was specifically bequeathed to Margaret Meyers. Appellant Bank of America National Trust and Savings Association was named executor of his will, was appointed and qualified as such and entered upon the performance of its duties. Margaret Meyers was a residuary legatee of a one-fourth interest in the estate and in part at least the estate consisted of certain rental properties which required attention. An assistant trust officer of the bank on receiving notice of the death of Cartner, on December 12, 1946, contacted Margaret Meyers and told her of

the legacies. He testified as follows: That he met her after the first conversation and asked about the automobile; that Mrs. Meyers pointed to where the car sat at the curb on the street and stated that it had been Cartner's car; that he then discussed with her the matter of taking care of the rental properties and suggested that since she was a devisee in respect of this property for the present it would be to her advantage to look after the same for the bank until a permanent and final arrangement could be worked out; that he pointed out she would be helping to protect her own property; that she had suffered an injury which made it difficult for her to get about and she spoke of using the automobile for that purpose; that she was told that, generally speaking, the bank, as an executor, impounded automobiles that had belonged to a decedent, but that if it was necessary for her to use the car involved here she would be permitted to do so for the purpose of enabling her to look after the estate property but for no other purpose, and that she was permitted to use the automobile in the immediate vicinity of the houses, which were in Oakland, for the purpose of performing the duty of looking after the same and for no other purpose; that she began using the car and during her use of it asked if she could take it to Oregon on a pleasure trip, which the bank refused to permit; that who should pay for gas, oil and garaging was not discussed and no checkup on this was made by the bank; that the services Margaret Meyers performed in respect of the estate property were gratuitous and consisted mainly in collecting assets and rents of the estate and depositing them with the bank; that she was told she could not use the car for pleasure; that nothing was said expressly restricting the use to any specific geographical area. It was undisputed that at the time of the accident out of which this action arose both the white and the pink slips for the car were in the name of decedent and the pink slip was in the custody of the bank as executor. Subsequent to the accident the license plates and the white slip, still in the name of Cartner, were received by the bank. After the accident the car was sold for salvage and the money received by the bank, the balance of the property loss involved was paid to the bank through an insurance carrier. The bank never applied to the court for permission to let Margaret Meyers use the automobile nor had it ever applied for permission to carry on the business of the estate.

On February 4, 1947, in Solano County, about 60 miles

distant from Oakland, a collision occurred between the Plymouth car and the automobile of respondents and there is no contention but that this collision was due to the negligent operation of the Plymouth car. In that car at the time of the accident were Margaret Meyer as driver, and her brother and her nephew. All were killed in the collision. They were driving north away from Oakland when the collision occurred. Traffic officers testified that the Plymouth car contained luggage, clothing, packages, canned fruits, preserves and personal belongings.

Respondents brought the action against the appellant bank as executor, and also against it in its individual capacity. The action was based upon two theories of liability. The first theory was that of agency (*respondeat superior*) and the second was that the bank was the "owner" of the car under Vehicle Code, section 402, the ownership liability statute. At the close of respondents' case the trial court granted a motion for nonsuit in favor of the appellant bank as executor and later instructed the jury that there was no evidence of agency and hence that the sole ground of liability was under the ownership liability statute. The motion of appellant at the close of evidence for a directed verdict as to the claim of liability in its individual capacity under the statute was denied. The jury returned verdicts aggregating $11,000. Appellant's motion for a new trial was denied and this appeal followed.

The questions presented by this appeal are the following: Was the appellant bank the owner of the Plymouth car within the meaning of Vehicle Code, section 402? If so, was the permission given by appellant to Margaret Meyers to use the car a limited permission and were these limitations violated as a matter of law so as to render the permission inoperative at the time of the accident? Did the trial court err in refusing an instruction requested by appellant?

Vehicle Code, section 402, reads in part as follows:

"(a) Every owner of a motor vehicle is liable and responsible for the death of or injury to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner, and the negligence of such person shall be imputed to the owner for all purposes of civil damages."

Where the issue of permissive use is raised by the pleadings the burden is upon the plaintiff who seeks to recover under the statute to prove that the defendant was the "owner" of the vehicle involved and that at the time the injury was inflicted the vehicle was being used with the permission, express or implied, of such owner. The definition of the word "owner" which appears in the Vehicle Code is as follows:

" 'Owner' is a person having all the incidents of ownership, including the legal title of a vehicle whether or not such person lends, rents or pledges such vehicle; the person entitled to the possession of a vehicle as the purchaser under a conditional sale contract; the mortgagor of a vehicle; or the State, or any county, city, district or political subdivision of the State, when entitled to the possession and use of a vehicle under a lease, lease-sale, or rental-purchase agreement for a period of twelve months or more." (Veh. Code, § 66.)

Probate Code, section 300, provides:

"When a person dies, the title to his property, real and personal, passes to the person to whom it is devised or bequeathed by his last will, or, in the absence of such disposition, to the persons who succeed to his estate as provided in Division II of this code; but all of his property shall be subject to the possession of the executor or administrator and to the control of the superior court for the purposes of administration, sale or other disposition under the provisions of Division III of this code, and shall be chargeable with the expenses of administering his estate, and the payment of his debts and the allowance to the family, except as otherwise provided in this code."

That the title to property, both real and personal, passes upon death to the persons entitled thereto as declared by the foregoing code section has been the law of this state for a long time. (*Noble* v. *Beach,* 21 Cal.2d 91 [130 P.2d 426].) "The title of heirs does not originate in the decree of distribution; the decree serves only to release the property from administration to which it was subject." (*Bates* v. *Howard,* 105 Cal. 173, 183 [38 P. 715].) "Under the Statute of Descents and under the will, if there is one, if not otherwise provided, the entire estate, both real and personal, with all accretions, vests in the heirs and devisees immediately on the death of the testator or intestate, subject only to the lien of the executor or administrator for the purposes of administration . . . with the right in the administrator of pres-

ent possession, which continues till the estate is settled or delivered over to the parties entitled by the order of the Probate Court. . . . The executor has no more right to sell personal than real estate, unless necessary for its preservation, or to pay charges upon it. . . . He no more owns it, as he did at common law, than he does the real estate." (*Matter of Estate of Woodworth*, 31 Cal. 595, 604, 605, 618.) Further as to the nature of the title cast by the death of the owner we find in *Noble* v. *Beach, supra,* the Supreme Court declaring: "Before distribution, a creditor may obtain a judgment lien on the interest of his debtor as heir or devisee and legatee of an estate . . ., and he may execute upon the debtor's interest at that time." "The personal representative is generally entitled to the exclusive possession of the personalty of the estate for the purposes, and during the course, of administration. His possession is deemed that of the court." (33 C.J.S. "Executors and Administrators," § 300.)

██ It is obvious that a personal representative, either in or out of possession of estate property, real or personal, is not the owner thereof within the scope of the ordinary meaning of that word nor does the personal representative come within the scope of the word "owner" as that term is defined in Vehicle Code, section 66, *supra.* ██ If, then, we are to declare that the appellant was such owner in this case it must be because section 402 can, in consideration of its purposes, be so construed as to permit that declaration. We think such a construction of the code section would do violence to its language and would amount to judicial legislation. Neither in section 402 nor in the definition contained in section 66 is there any hint that the word "owner" is to be taken as including one entitled only to possession; and even if there was we would still have to find that the limited sort of possession permitted to a personal representative, which is possession not for use but for purposes of administration, was intended to be included within the meaning of the word "owner" as used in the code. A personal representative in possession of a specifically-devised automobile would have no right to the general use of it either for the general benefit of the whole estate or at all, for that would be to consume the property of the legatee for the benefit of others. We think in this case that the right of the appellant as personal representative to possess, for administrative purposes, the Plymouth car specifically devised to Margaret Meyers falls entirely

without the meaning of the word "owner" as used in the legislation in question.

In *Logan* v. *Serpa*, 91 Cal.App.2d 818 [206 P.2d 70], the court was concerned with the ownership of a car within the meaning of section 402 of the Vehicle Code, which had been community property of the husband, then deceased, and his surviving wife. There had been no steps taken to administer the property in probate. The surviving wife was operating the car and had given permission to another to use it. An accident occurred and when the surviving wife was sued under the theory of ownership liability she denied ownership, claiming that possession and right of control of the automobile must be considered as being in the administrator to be appointed and in the probate court. Her contentions were rejected and she was held to liability as owner. Said the court:

"Ownership, for the purpose of establishing liability under section 402 of the Vehicle Code must have been in someone, otherwise the real purpose of the act in protecting other people on the highway could be legally defeated by allowing cars to remain in the names of deceased persons. It appears to us, therefore, that since it was established that the car was community property, the argument of plaintiff is tenable, i.e., that under sections 201 and 201.5 of the Probate Code 'upon the death of either husband or wife, one-half of the community property belongs to the surviving spouse, and that in the absence of testamentary disposition by the decedent the other one-half goes to the surviving spouse.' " We have not here the exact counterpart of the situation presented in *Logan* v. *Serpa, supra,* for in the case before us the appellant had been appointed as executor of the will of the decedent; and if it had not taken physical possession of the automobile before its negotiations with Margaret Meyers occurred, nevertheless it had the right to that possession and we think on appeal it must be considered that it had the actual possession. But its possession was not that of an owner, and even its right of possession was a limited one. This limited right does not authorize a personal representative to permit use by others. We are not here concerned with liability based upon the doctrine of *respondeat superior*. It may be that, construed as we think it must be construed, a personal representative in possession of an automobile who wrongfully permits its use by another creates a situation demonstrating a lack of the statute to cover that particular permissive use. But this

affords no justification for a construction which is clearly without the meaning of the language used by the Legislature.

Respondents argue that the purpose of section 402 "is to provide to injured parties someone to whom they can look for redress," and "the most logical party defendant in the case of an estate is the administrator or executor thereof." We think, however, the answer to this argument is that the Legislature has said nothing about liability of persons who have nothing but a limited right of possession. The Legislature has addressed itself exclusively to the subject of ownership liability. Respondent further argues that the term "owner" is one which has many meanings, depending upon the circumstances of its use. This is true, of course, but the Legislature was well aware that many people possess automobiles who have no ownership interest therein and yet no provision was made with respect to the liability of these in permitting the use by others of automobiles so possessed by them. The statutory omission is too broad to be covered by construction where the Legislature has elected to remain silent.

Appellant next contends that even if the executor could be considered as individually liable as an "owner" under the Vehicle Code yet Margaret Meyers must be held as a matter of law to have been driving at the time of the accident without the express or implied consent of the bank. This, appellant says, is so because if permission was given it was limited and the car at the time of the accident was being operated in violation of the limits of permitted use. That at least a limited use was permitted insofar as appellant executor could give permission was clearly shown. The car was left in the possession of Margaret Meyers and it was arranged between her and the executor that she should perform certain services in connection with estate property and should use the car for that purpose. The trust officer testified, as has been noted, that he laid down specific limitations governing the car's use and no witness appeared who testified to the contrary. There was no express geographical limitation. The limitation expressed was that the car could not be used for pleasure purposes and could be used only in connection with caring for the rental properties of the estate and collecting the rentals therefor. But the car was left in the possession of Margaret Meyers and was garaged by her. Nothing was said about gasoline and oil or needed repairs and no checkup was ever made by the executor as to these

items, thus indicating the executor's lack of concern as to such matters. In addition to all this there was no conclusive proof that the car was not being used within the limits of permission when the accident occurred. To be sure, it is difficult to see how the car could be used within the limits of permission as testified to by the trust officer up in Solano County 60 miles from the estate properties; and the car did contain luggage and the like, indicating that the driver and the occupants were on a trip not connected with the estate properties. But we think nothing more than an issue of fact as to limitations having been violated is presented by the record here. From the facts we have related, including the principal purpose of use, that is the care of estate property and the furthering of estate interests generally, it could be inferred that the use made was within the limits of the permission given.

Appellant further contends that the trial court committed prejudicial error in refusing to give the following instruction requested by it:

"If you find from the evidence that the permission given Margaret Meyers to use the Plymouth automobile was restricted and limited to the place where the rooming house business of the Estate of Thomas J. Cartner, deceased, was to be conducted, and if you find further that at the time of the accident Margaret Meyers was not operating said automobile in a locality wherein the business of the rooming house was conducted, then and in that event you will find that Margaret Meyers did exceed her authority and the permission to operate the car was therein terminated, and in these events you must find for the defendant."

While we have said an issue of fact was presented as to whether or not use limitations were being violated at the time of the accident, yet that is but to say that an issue of fact in respect to such claimed violation was to be decided by the jury, for where permission is granted to operate a car for a limited time or for a limited purpose or within limitations as to place of use a substantial violation of any of such limitations terminates the original express consent and makes the subsequent use without permission. (*Henrietta* v. *Evans,* 10 Cal.2d 526, 528 [75 P.2d 1051].) In view of the evidence that had been given, as we have hereinbefore stated it, we think it clear that the instruction requested ought to have been given. Not only was it refused but the jury were told affirmatively that owners of motor vehicles were liable for

negligent use by permittees and that whether such implied or express permission had been given was a question of fact for the jury to decide. The jury were then further instructed that if they should find that appellant ''did in fact authorize and permit Margaret G. Meyers, deceased, to operate their automobile, and that said Margaret G. Meyers was negligent in the operation thereof, and that said negligence was the sole and proximate cause of the injuries herein'' then their verdict should be for the plaintiffs and against the defendant. Thus the court effectively withdrew from the jury the issue of violations of use limitations and consequent unauthorized use in a case where the record would have supported a finding of the jury that for those reasons the use, although originally permitted, had become a use without permission.

We think it unnecessary to treat other contentions advanced by appellant since, for the reasons hereinbefore given, the judgment appealed from must be and it is hereby reversed.

Adams, P. J., and Schottky, J. pro tem., concurred.

Respondents' petition for a hearing by the Supreme Court was denied March 31, 1952. Gibson, C. J., Shenk, J., and Carter, J., were of the opinion that the petition should be granted.