[Civ. No. 16137.   First Dist., Div. One.   Jan. 26, 1955.]

## D. SOARES, Respondent, v. C. E. STEIDTMANN, Appellant.

Frisbie & Hoogs for Appellant.

Sturgis, Den-Dulk, Douglass & Henes and John D. Den-Dulk for Respondent.

PETERS, P. J.—The parties to this quiet title action claim title to a parcel of real property through deeds from the same grantor. The defendant, C. E. Steidtmann, claims through a prior quitclaim deed. The plaintiff, D. Soares, claims through a subsequent grant deed. The trial court quieted the title of the plaintiff. Defendant appeals.

The facts are not in dispute. Sometime prior to June 5, 1946, one C. F. MacKenzie owned certain real property in Contra Costa County. He died prior to the date mentioned, leaving his widow, Henrietta MacKenzie, surviving him as his heir. On June 5, 1946, the title to the real property still standing of record in the name of the deceased husband, the widow and heir quitclaimed all her right, title and interest in the property to one C. H. Collier. Thereafter, Collier quitclaimed his interest to Steidtmann, the appellant. Some six years later, on July 1, 1952, the widow, by grant deed, conveyed her interest in the same property to D. Soares, the respondent, who recorded his grant deed on July 18, 1952. It is admitted that Soares, when he accepted the grant deed, had actual notice of the earlier quitclaim deed.

After the grant deed had been executed and delivered to Soares, the probate court in Los Angeles, on petition of the widow, pursuant to section 645 of the Probate Code, made its order setting aside the entire estate of C. F. MacKenzie to the widow on the ground that said estate, including the property here involved, was of the value of less than $2,500.

To remove the cloud on the title created by the two outstanding deeds to the same property, Soares, the holder of the grant deed, brought this action. The trial court held that, as between appellant, the transferee of the prior quitclaim deed, and respondent, the grantee in the subsequent grant deed, the latter should prevail. The theory of the trial court was that the title received by the widow under section 645 of the Probate Code was a new title which passed, as an after-acquired title, to the holder of the grant deed. ■ An after-acquired title, of course, does not pass under a quitclaim deed, as it does under a grant deed. (See cases collected 15 Cal. Jur.2d p. 620, § 214.)

Appellant contends that, as the one claiming through the prior quitclaim deed, he should prevail over the grantee of the subsequent grant deed. With this contention we agree. ■ Upon MacKenzie's death, title to his property, including title to the real property here involved, immediately vested under the provisions of section 300 of the Probate Code in his widow as his sole surviving heir. (*Bates* v. *Howard*, 105 Cal. 173 [38 P. 715]; *Fountain* v. *Bank of America*, 109 Cal. App.2d 90 [240 P.2d 414]; *Estate of Laurence*, 84 Cal.App.2d 500 [191 P.2d 109].) Thus, title to this property vested in Mrs. MacKenzie upon the death of her husband, subject to the lien of the administrator for the purposes of administration, which purposes include, upon a widow's petition, the duty of setting aside to the widow the decedent's estate if it does not exceed $2,500, regardless of the claims of legatees or of general creditors, except for last illness, funeral and administration expenses. Thus, when MacKenzie died prior to June 5, 1946, Mrs. MacKenzie was vested with title to the property as sole surviving heir of her husband, which title was subject to debts and claims against the decedent. ■ But she had another right—the right to petition the court to set the estate aside to her under section 645 of the Probate Code. This right is similar to the right of a widow to a family allowance, under section 680 of the Probate Code, and the right to a probate homestead under section 660 of the Probate Code. All three rights are conferred for the same general purposes of protecting widows and children. These rights may be waived by conduct or by express agreement. (*Estate of Brooks*, 28 Cal.2d 748 [171 P.2d 724].) They are rights which the widow may exercise if she so desires, except in limited circumstances. ■ The right to have the estate set aside to her, under the circumstances set

forth in the code sections, comes into existence at the time of death of the husband. Until exercised by the widow it is at least an inchoate right, that comes into fruition by the exercise of the power by the widow. ■ A quitclaim deed, of course, passes whatever interest legal or equitable, that the grantor possesses at the time of the grant. (*Rosenthal* v. *Landau,* 90 Cal.App.2d 310 [202 P.2d 810].) This includes the passing of rights only inchoate at the time of the grant but which later ripen into a vested estate. Thus, in *Crane* v. *Salmon,* 41 Cal. 63, a quitclaim was executed before the grantor had acquired title to a government patent. It was held that the after-acquired patent operated to feed the quitclaim deed. (See discussion 15 Cal.Jur.2d p. 622, § 215.)

In contending that title acquired under section 645 of the Probate Code is a new title that as an after-acquired title did not pass under the prior quitclaim deed, respondent places his main reliance on the case of *Estate of Woodburn,* 212 Cal. 683 [300 P. 22]. There the wife, by antenuptial agreement, waived any right in property then or thereafter owned by her husband, and specifically waived any right of inheritance in her husband's property. After the husband's death the wife attempted to have the property set aside to her as an estate of less than $2,500. It was contended that the widow had waived this right by the antenuptial agreement. In holding that such agreement did not constitute a waiver of the right of the widow to have an estate of less than $2,500 set aside to her, the Supreme Court stated (p. 687):

" . . . we are of the opinion that the antenuptial settlement . . . cannot be held to have accomplished a waiver of those rights to which the widow or minor children, if any, of a decedent are entitled under the provisions of article I, chapter V, part III, title XI of the Code of Civil Procedure [now in the Probate Code]. The provisions of said chapter and article expressly relate to the support of the family of a decedent, and to which the widow and minor children of said decedent become entitled upon his death and the probate of his estate, without regard to any interest which they or any of them may have had in the property of said decedent during his lifetime, and without reference to their heirship or right of inheritance therein. When a decedent dies, leaving a widow, or a widow and minor child or minor children, the widow and minor child or children, if any, become entitled under the foregoing provisions of said code to have the entire property and estate of the decedent set apart for the use and

support of his family upon the return of the inventory and appraisement of his estate, showing that the total value thereof is less than the sum of $2,500. The rights to which this widow became entitled under the foregoing provisions of the code were in no sense either the rights of inheritance or rights depending upon previous interest in the property of the decedent owned by him during his lifetime, and which she may or may not have surrendered by virtue of the terms of their antenuptial agreement. The trial court was, therefore, correct in ordering the whole estate of the decedent set apart to his widow upon the showing made . . .''

It is argued that if an antenuptial agreement waiving all rights in the property of her husband does not amount to a waiver of rights under section 645 of the Probate Code, then the wife must have had no rights of any kind to waive insofar as section 645 is concerned prior to the time she petitioned for the relief permitted by the code section. Therefore, a quitclaim deed, before the wife exercises the privileges conferred by section 645, could not have affected the widow's right to exert the privilege. Of course, in the Woodburn case the antenuptial agreement was entered into prior to the death of the husband, and the Supreme Court very properly pointed out that a waiver at that time did not affect the right of the wife under section 645, because the rights under such code section did come into existence only ''upon his death.'' In the instant case the quitclaim deed was not executed until after those rights had come into existence, namely, after the death of C. F. MacKenzie. Thus, the Woodburn case is distinguishable from the instant case.

Interestingly enough, the Woodburn case did not cite one authority in support of its conclusions. Although it is distinguishable from the instant case for the reason already stated, there are some early cases more directly in point, which hold that such waivers do not affect the right conferred under section 645. Thus, in *Estate of Moore*, 57 Cal. 437, two days after the death of her husband, the widow executed a quitclaim deed to the property in the estate. Thereafter, she successfully sought to have a probate homestead declared on the property. (See also *Phelan* v. *Smith*, 100 Cal. 158 [34 P. 667].) Other cases along the same line could be quoted. If these cases were still the law such cases would be conclusive in the present controversy, and would require an affirmance in favor of respondent, but such cases no longer represent the law of California. All such cases were directly

or indirectly overruled in *Estate of Brooks*, 28 .Cal.2d 748 [171 P.2d 724]. That case involved an application for a family allowance and a probate homestead. The Supreme Court, after a careful review of all the authorities, expressly repudiated, directly or indirectly, the authorities above cited, and others, and elected to follow the rule that the right to such benefits is not absolute but can be waived by conduct or by express agreement. (See also *Estate of Schwartz*, 79 Cal. App.2d 308 [179 P.2d 868].) In the Brooks case, the wife, prior to the death of her husband, had separated from him, was not entitled to support, and the interlocutory decree so provided, and she had waived any right to support. All these things occurred before the death of the husband. They were held to constitute a bar to the right to a probate homestead or family allowance. The same rule should apply to rights conferred by section 645 of the Probate Code. Certainly, if a waiver can be made before the death of the husband, a waiver can surely be made thereafter.

In the instant case there was a waiver as a matter of law. After the widow had inherited the property, and after the right to have the estate set aside to her had accrued by her husband's death, she conveyed by quitclaim deed all of her interest in the property to appellant. Six years later she sought to completely defeat her deed by conveying to another, and then sought to make the second deed effective by applying to have the estate set aside to her under section 645 of the Probate Code. Whether it be held that the widow is estopped, has waived her rights, or had already conveyed away this right to the holder of the quitclaim deed is immaterial. In any event she cannot, nor can the respondent as the subsequent grantee with knowledge, assert any rights in the property based upon section 645 of the Probate Code. The successor in interest to the quitclaim grantee must prevail.

The judgment appealed from is reversed.

Bray, J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied February 25, 1955, and respondent's petition for a hearing by the Supreme Court was denied March 22, 1955.