[Civ. No. 21319. Second Dist., Div. Two. Mar. 28, 1956.]

Estate of FRED H. BIXBY, Deceased. DANA LATHAM, as Guardian, etc., Petitioner and Appellant, v. KATHARINE BIXBY HOTCHKIS et al., Contestants and Appellants; FRED H. BIXBY, JR., Respondent.

Latham & Watkins, A. R. Kimbrough, Ira M. Price II and Richard F. Allen for Petitioner and Appellant.

Sherman Anderson, Lawler, Felix & Hall and William T. Coffin for Contestants and Appellants.

Fred H. Bixby, Jr., in pro. per., Blau, Shaw & Miller, Louis C. Blau, Joseph M. Shaw and Simon Miller for Respondent.

FOX, J.—These appeals are from an order for preliminary distribution rendered in the matter of the estate of the late Fred H. Bixby. The controversy is with respect to the amount that should be distributed to the decedent's widow, Florence G. Bixby, by virtue of (a) the executor's receipt of $76,000 in dividends on stock specifically bequeathed to her, (b) the taxability of the dividends to the estate under the income tax laws, and (c) the utilization by the executor of expenses of administration as deductions for federal income rather than federal estate tax purposes.

The trial court held that Mrs. Bixby was entitled to receive the amount of the dividends less the portion of the income taxes actually paid by the executor allocable against the

dividends. One appeal is taken by the testamentary trustees who are the residuary legatees and devisees, and the other (cross-appeal) is taken by the guardian *ad litem* of Mrs. Bixby. The particulars of the controversy and the contentions of the parties are set forth in an agreed statement on appeal. The following statement of the case is taken from this agreed statement.

### STATEMENT OF THE CASE

The decedent, Fred H. Bixby, died testate May 17, 1952, a resident of Long Beach, California. He left an estate of the appraised value of $4,567,493.56 consisting of two automobiles, cash, securities, and real property. Thirty-eight thousand seven hundred fifty-five (38,755) shares of Fred H. Bixby Company stock appraised at $4,340,560 ($112 per share) constituted the principal asset of the estate.

The decedent was survived by his spouse, Florence G. Bixby (hereinafter called "Mrs. Bixby"), by four children, Katharine Bixby Hotchkis, Florence Elizabeth Bixby Janeway, Deborah Bixby Green, and Fred H. Bixby, Jr., and by eight grandchildren. The decedent's will was admitted to probate June 16, 1952, and letters testamentary were issued to Allen L. Chickering and to Mrs. Bixby. At the time of the decedent's death and subsequently Mrs. Bixby was in poor health. She was adjudged to be an incompetent person January 22, 1953, and the four children above named of the decedent and herself were appointed guardians of her person and Security-First National Bank of Los Angeles guardian of her estate. Following such adjudication, Mrs. Bixby was removed as one of the executors of the decedent's will and letters testamentary were issued February 16, 1953, to Allen L. Chickering as sole executor.

By the terms of his will, the decedent gave his automobile and 19,000 shares of Fred H. Bixby Company stock to Mrs. Bixby and the residue of his estate in equal shares to four trusts designated respectively the first, second, third and fourth trusts. Each of the trusts is to continue until the death of the survivor of the decedent's four children and thereupon the trust estate is to be distributed to the decedent's then living grandchildren, per capita, the then living issue of any then deceased grandchild to take that grandchild's share. During the continuation of each trust, the net income is to be paid to a designated child of the decedent for life and thereafter to the issue of such child, or failing such issue,

to the decedent's grandchildren, per capita, living at the time of the particular distribution of income, the issue of any deceased grandchild to take that grandchild's share. The three daughters of the decedent are the trustees of the first, second and third trusts and they are respectively the primary income beneficiaries of those trusts. Security-First National Bank is the trustee of the fourth trust and the decedent's son, Fred H. Bixby, Jr., is the primary income beneficiary of that trust. The four trusts are particularly declared in the order for preliminary distribution rendered by the trial court under date of December 30, 1954.

In his will, the decedent directed that all succession taxes be paid from the residue of his estate. The California inheritance tax due from the decedent's estate as normally computed amounts to less than the 80 per cent credit allowable under the basic federal estate tax law for state inheritance tax. Accordingly, the tax payable from the estate under the California inheritance tax law is equal to the 80 per cent credit and the combined succession taxes payable from the estate, viz., those payable under the California inheritance tax law and the federal estate tax law, are equivalent to the federal estate tax undiminished by the 80 per cent credit. The highest rate of the succession taxes applicable to the estate is 49 per cent.

For California and federal income tax purposes, the executor adopted a fiscal year for the estate ending April 30th. The gross income of the estate for its initial fiscal year which ended April 30, 1953, amounted to $160,602.92, inclusive of $76,000 in dividends received by the executor during that fiscal year on the 19,000 shares of Fred H. Bixby Company stock bequeathed Mrs. Bixby. Agreeably with the federal tax laws and regulations, the executor concluded to utilize as deductions for income rather than federal estate tax purposes, fees and other expenses of administration aggregating $120,-270.28. The federal and California income taxes actually paid by the executor for that fiscal year amounted to $18,-728.16 of which $8,713.40 is allocable to the dividends on the 19,000 shares of stock bequeathed to Mrs. Bixby. Had the executor not utilized the aforementioned fees and other expenses of administration as income tax deductions, the income taxes payable by him for the fiscal year in question would have amounted to $120,378.11 and the portion thereof allocable to said dividends on Mrs. Bixby's stock would have been $56,964.96.

The 19,000 shares of stock bequeathed to Mrs. Bixby were distributed to her pursuant to an order for partial distribution rendered by the trial court September 3, 1953. The only dividends on said shares paid to the executor were the aforementioned dividends aggregating $76,000 received by the executor during the fiscal year ending April 30, 1953. Those dividends were received by the executor in the amounts and on the dates following: $19,000, July 1, 1952; $19,000, November 1, 1952; $38,000, February 28, 1953.

Had the 19,000 shares of stock been distributed to Mrs. Bixby as of the date of the decedent's death and the $76,000 in dividends consequently paid to her as declared, the federal and California income taxes payable by Mrs. Bixby for the calendar years 1952 and 1953 would have been increased by amounts aggregating $56,497.48. Had the aforementioned fees and other expenses of administration aggregating $120,-270.28 been utilized as deductions by the executor for federal estate tax purposes rather than as deductions for federal income tax purposes, the succession taxes payable from the decedent's estate would have been reduced by $58,932.44.

Mrs. Bixby has no interest in the estate's income except to the extent of the $76,000 in dividends, the residuary beneficiaries being entitled to the benefit of the balance ($84,-602.92) of the gross income for the fiscal year in question. The utilization by the executor of administration expenses aggregating $120,270.28 as income tax deductions reduced ratably the portion of the income taxes allocable to the $76,-000 in dividends and the portion of the income taxes allocable to the remaining income of $84.602.92.

November 3, 1954, the executor filed his second account current, report of administration and petition for preliminary distribution. By such petition, the executor prayed distribution to Mrs. Bixby of the amount due her by virtue of the executor's receipt of said dividends and further prayed distribution of a part of the residue of the estate to the testamentary trustees. In his petition, the executor alleged that $19,035.04 was distributable to Mrs. Bixby by virtue of his receipt of said dividends, that sum being the amount of the dividends ($76,000) minus the portion ($56,964.96) of the income taxes allocable against the dividends which the executor would have had to pay for the fiscal year ending April 30, 1953, had he not utilized the expenses of administration aggregating $120,270.28 as income tax rather than federal estate tax deductions.

November 29, 1954, Fred H. Bixby, Jr., filed his objections to executor's second account current, report of administration and petition for preliminary distribution. In his objection, Fred H. Bixby, Jr., alleged that the executor's petition failed to set forth sufficient facts to show that Mrs. Bixby's estate, the decedent's estate or anyone interested therein, would not suffer loss or prejudice through the distribution to Mrs. Bixby of $19,035.04 in lieu of the $76,000 received by the executor as dividends on the 19,000 shares of stock prior to the distribution of said stock to Mrs. Bixby.

When the executor's petition and objections thereto came on for hearing, it appearing that with respect to the issue as to the amount distributable to Mrs. Bixby by virtue of said dividends, Security-First National Bank was in an inconsistent position being, on the one hand, guardian of Mrs. Bixby's estate, and on the other, one of the testamentary trustees, the court appointed Dana Latham, Esquire, guardian *ad litem* of Mrs. Bixby.

In acting on the executor's petition and pursuant to stipulation between the guardian *ad litem* and executor, the court, by. order for preliminary distribution rendered December 30, 1954, ordered distribution to the testamentary trustees as prayed and distribution to Mrs. Bixby of the amount alleged by the executor to be due her by virtue of his receipt of said dividends, viz., $19,035.04. Also, it declared that such distribution to Mrs. Bixby should be without prejudice to the determination on or prior to the final distribution of the estate of the right of Mrs. Bixby to any additional sum that might be due her by virtue of the executor's receipt of the dividends and directed the guardian *ad litem* to present that issue for determination either by petition for further preliminary distribution or by other appropriate pleading.

Pursuant to such direction the guardian *ad litem* initiated the instant proceeding by filing his petition for distribution to Mrs. Bixby of the difference between the amount of the dividends, $76,000 and the amount of $19,035.04 ordered distributed to her on account of said dividends by the order of December 30, 1954. The testamentary trustees filed an answer to such petition alleging that nothing was distributable to Mrs. Bixby by reason of said dividends in addition to the $19,035.04 distributed to her by the order of December 30, 1954. Responsive to the guardian *ad litem's* petition, Fred H. Bixby, Jr., filed a statement in support of the petition.

At the hearing on April 4, 1955, of the guardian *ad litem's* petition and the pleading responsive thereto, the guardian *ad litem* and Fred H. Bixby, Jr., contended:

Income taxes assessed against the income of the estate received by the executor during administration are expenses of administration chargeable against the residue of the estate. Mrs. Bixby, therefore, was entitled to receive the whole of the $76,000 in dividends undiminished by any amount on account of income taxes paid or payable by the executor. In any case, the dividends should not be diminished by more than the portion ($8,713.40) of the income taxes actually paid by the executor allocable against the dividends. They make the same contentions here.

The testamentary trustees, on the other hand, contended below, and contend on these appeals:

Income taxes assessed against the income of the estate received by the executor during administration are not expenses of administration payable from the residue of the estate, but are charges against and payable from the income. Nothing, therefore, should be distributed to Mrs. Bixby on account of the dividends in addition to the $19,035.04 distributed to her by the order of December 30, 1954, because the amount distributable to° Mrs. Bixby on account of the dividends should be diminished by the portion of the income taxes of the estate chargeable there against and expenses of administration being payable under the California law from the principal of the residue of the estate, the amount of the estate income taxes chargeable against the dividends should be computed without regard to the executor's election to utilize expenses of administration aggregating $120,270.28 as deductions for federal income rather than federal estate tax purposes. In any case, the tax saving resulting from the utilization by the executor of the expenses of administration as income tax deductions should be credited to the principal of the residue of the estate at least to the extent necessary to offset the depletion in the residue resulting from the loss of the expenses of administration as federal estate tax deductions and the corresponding increase in the succession taxes.

The court below resolved the controversy by holding that Mrs. Bixby was entitled to receive $48,251.56 as the unpaid balance ($56,964.96) of the $76,000 in dividends minus the portion ($8,713.40) of the income taxes actually paid by the executor allocable against the dividends.

334

There are two basic problems presented by these appeals. The question presented by the guardian *ad litem's* appeal is this: Are income taxes paid by the personal representative during the period of administration chargeable against the income, or are they to be treated as expenses of administration payable from the principal of the residue of the estate? The primary question presented by the trustees' appeal is: What is the effect on the rights of the beneficiaries of the executor's utilization of expenses of administration as federal income rather than federal estate tax deductions? A few guiding principles should be stated before we attempt to answer these questions:

1. The rights of the beneficiaries of an estate vest as of the date of the decedent's death subject only to the power of the executor or administrator and the court to administer the estate for the period required for administration. (*Noble* v. *Beach*, 21 Cal.2d 91, 94 [130 P.2d 426]; *Fountain* v. *Bank of America*, 109 Cal.App.2d 90, 94, 95 [240 P.2d 414].)

2. A specific legacy or devise carries with it all accretions by way of dividends, interest or rents that may accrue after the death of the testator less, however, all taxes and other expenses attributable to the property during the administration of the estate. (*Estate of Daly*, 202 Cal. 284, 287 [260 P. 296]; *Estate of de Bernal*, 165 Cal. 223, 235-236 [131 P. 375, Ann.Cas. 1914D 26]; *Estate of McSweeney*, 123 Cal.App.2d 787, 790 [268 P.2d 107].)

3. The executor or administrator is not the owner of the estate assets; he is given possession and the right to collect income solely for the purpose of enabling him to settle the affairs of the estate. (*Fountain* v. *Bank of America, supra.*) His function is similar to that of a receiver or stakeholder whose duty is to preserve the estate and distribute it as the court shall direct. (*Murphy* v. *Crouse*, 135 Cal. 14, 17 [66 P. 971, 87 Am.St.Rep. 90]; *Estate of Healy*, 137 Cal. 474, 477 [70 P. 455].) He represents all the beneficiaries of the estate and must not favor one over another. (*Estate of Lynn*, 109 Cal.App.2d 468, 473 [240 P.2d 1001]; *Estate of Babb*, 200 Cal. 252, 255 [252 P. 1039]; *Roach* v. *Coffey*, 73 Cal. 281, 282 [14 P. 840].)

4. Estates are treated for tax purposes as separate entities, the tax on whose income is payable by the executor or administrator. The tax applies to the entire taxable

income of the estate. (Income Taxes, 26 Cal.Jur.2d p. 288, § 34.)

Bearing these principles in mind, we turn now to a consideration of who must bear the thrust of income taxes paid by the executor upon income accruing to the estate while in the course of administration. In the instant case, we are concerned with the dividends amounting to $76,000 which the executor received upon the 19,000 shares of stock of which Mrs. Bixby was the outright legatee. ■ As legatee of this stock, title thereto vested in her *eo instante* as of the date of the testator's death, at which time there also originated her right to receive the income (dividends) produced by this stock subsequent to the testator's death. Had the legatee received this income when her right thereto accrued, it is undisputed that the payment of an income tax on these funds would have been the legatee's obligation. However, distribution not having as yet been made and the estate being a taxable entity, the executor was required to pay an income tax on this and the other income received by him during the course of administration. ■ Since such taxes are the subject of and measured by the income, it seems only fair that they should be paid therefrom and not from the principal of the residue of the estate. Although the precise point has not been directly adjudicated in this state,* such a rule is in harmony with the equitable principle that the burden of the tax accompanies the income and should be borne by the account into which the taxed item goes. (*Estate of Mankowski*, 110 N.Y.S.2d 677, 680; *Holcombe* v. *Ginn*, 296 Mass. 415 [6 N.E.2d 351, 353, 108 A.L.R. 1134]; 2 Scott on Trusts, §§ 232.2 and 233.3, pp. 1260, 1265; Nossaman on Trust Administration and Taxation, § 253, p. 226.) ■ Although the estate bears the burden of the tax when it holds the income, it transfers that burden (the extent of which will be discussed later) to the legatee when it distributes the income

---

*However, this point has been involved, incidentally, in two cases: In *Estate of Schiffmann*, 86 Cal.App.2d 638 [195 P.2d 484], the trial court in ordering distribution treated the income taxes paid by the executor as expenses of administration payable from the principal of the residue. The decree of distribution was affirmed. In *Estate of Welsh*, 89 Cal.App.2d 43 [200 P.2d 139], the trial court in ordering distribution of the estate charged the income taxes paid by the executor against the income. This decree of distribution was also affirmed. But in neither case does it appear that any issue was presented as to where the burden of income taxes paid by an executor shall fall, nor is the point discussed in either opinion.

to him. (See *Estate of Bernal, supra*; *Estate of McSweeney, supra.*)

When consideration is given to the high rates at which federal income taxes are assessed, it is at once apparent that if those taxes are not to be paid from the income which is the subject of and measures the income taxes but from the principal of the residue of the estate, the distributive shares of the residuary beneficiaries are vulnerable to substantial depletion. To charge the estate's income taxes against the principal of the residue gives the persons entitled to the income substantial benefits over and above what they possibly could have realized if the income had been distributed to them as received, thus giving the person entitled to the income a windfall which he would not realize were it possible to effect distribution as of the date of the decedent's death. The windfall, moreover, comes from the pockets of the residuary legatees. Any such rule would be patently inequitable; its application would not mean that the income escapes taxation but that the onerous burden of the income taxes would be shifted from the recipients of the income to the persons entitled to the residue.

On the basis of logic and as a matter of equity, the conclusion is inescapable that income taxes assessed against the estate's income during the period required for administration should be charged against that income and not against the principal of the residue.

We pass now to the problem presented by the trustees' appeal, viz.: What is the effect on the rights of the beneficiaries of the executor's utilization of expenses of administration as federal income rather than federal estate tax deductions? In order to strip the problem of its esoteric trappings and place it in its proper perspective, a few prefatory observations are in order by way of clarification of the treatment of deductions in connection with the fiduciary returns which an executor is required to file under the provisions of the Internal Revenue Code, 26 U.S.C.A.

The taxable income of an estate, with certain exceptions not here germane, is computed in the same manner as that of an individual. The tax imposed upon the taxable income of an estate must be paid by the executor. The period of administration or settlement of the estate is, of course, the period actually required by the executor to perform his normal administration functions. During this period administration expenses accrue, and these expenses, in the case at

bar, have been paid from the principal of the residue of the estate. The propriety of using that fund as the source of payments is not challenged. Taxwise, administration expenses of estates may be treated as a deduction under the income tax return or under the estate tax return. However, to obviate double deductibility, administration expenses are allowable as a deduction only once, and the executor is afforded an election as to whether he will apply the deduction against the estate tax or against the income tax. (§ 162(e), Internal Revenue Code, 26 U.S.C.A., reenacted as § 642(g) of the Internal Revenue Code of 1954.) This gives the executor an opportunity of determining under which return it would prove more advantageous taxwise to claim the administrative expense deduction, and places him in a position to minimize the aggregate of taxes paid by the estate. Confronted with this elective treatment of deductions, the discreet executor will, of course, study the applicable estate tax and estate income rates and if he finds that there is a wide disparity between them, it would be judicious to avail himself of the deduction in the place where the optimum advantage will accrue to the estate, that is, by diminishing the aggregate amount of taxes payable to the federal government.

In the case at bar, the executor discharged his responsibility wisely under the circumstances by electing to utilize the administration expenses as an income tax deduction, although such expenses were borne by the principal of the residuary estate. In so doing, having reported an income of some $160,000, he paid a tax of $18,728.16. Had he not utilized this deduction on the estate income tax return, the tax would have been $120,378.11. He thus effected a tax saving of $101,649.95, resulting in a very substantial benefit to the legatees and beneficiaries entitled to the income. While this is a most obviously desirable result, its correlative effect on those entitled to corpus is unfortunate. For had the administrative expenses been used as a deduction in the federal estate tax return, the succession taxes payable from decedent's estate would have been reduced by $58,932.44. To that extent the remainder beneficiaries of the residuary trusts have been penalized to effect the income tax saving previously described.

 It is at once manifest that the election to effect a tax saving afforded the executor under the Revenue Code does not justify the severe disruption and disarrangement of what

would otherwise constitute the beneficial interests of the legatees and remaindermen under the will. Recognizing this inequity, the court below charged Mrs. Bixby's income account with the sum of $8,713.40, this sum being the part of the $18,728.16 in federal and state income taxes paid by the executor which is allocable to the dividends on the stock bequeathed to her. This, however, does not go far enough in adjusting the rights of the parties and in repairing the detriment occasioned to the corpus of the estate by giving only the income beneficiaries the benefit of the deduction for administration expenses. The total income tax saving, as we have seen, was $101,649.95. The consequent impairment of corpus was $58,932.44, the amount by which the estate tax was increased by being deprived of the deduction of administration expenses. The impact of this loss to corpus is borne by the remaindermen. In such a situation, the equitable solution is to reallocate enough of the tax saving to the principal account to make whole the detriment suffered by corpus. (*Estate of Warms*, 140 N.Y.S.2d 169.) The virtue of this approach is that while a significant benefit in the form of tax saving still accrues to Mrs. Bixby and the income beneficiaries, it is not exacted in the form of an unjust enrichment at the expense of the residuary beneficiaries.

Precisely this technique was adopted in *Estate of Warms, supra,* where, as here, the executor elected to utilize expenses of administration as deductions for income tax purposes, causing an increase in the succession taxes and a proportionate diminution in the residue of the estate. In approving the suggestion that the income tax saving resulting from the use of the deductions on the income tax should be credited to the principal to the extent necessary to offset the depletion in the residue by the nonavailability of such deductions for estate tax purposes, the surrogate remarked (p. 171) : ''With respect to his alternative claim, the special guardian does not object to the income beneficiary retaining any amount in excess of the saving in estate tax that would have resulted had administration expenses been deducted from principal on the estate tax return. His position is that the amount of such tax saving should be credited to the remainder interest. This position is sustained by the court. The tax option which results in a benefit to the income beneficiary, especially where she is coexecutrix, should not be exercised to the detriment of the remaindermen. The remainder interest is entitled to the benefits which would have resulted

if the expense with which it is charged had been deducted on the estate tax return.''

Such a rule commends itself to the conscience of the court as one under which no one is injured by an unjust encroachment on his inheritance. Apart from its simplicity of application, we adopt this rule because it places the burden of the income tax on the income legatee, where it properly belongs, and obviates any dislocation of the testator's bounty by shifting the burden of an income tax to a residuary legatee. While the executor's election as to the use of deductions under the present circumstances still enables the income beneficiaries to receive an actual cash benefit in the form of tax savings, by the process of reallocating an appropriate portion of such savings to principal, no part of any beneficiary's inheritance is diminished so that another may reap a profit at his expense. ▓ It is within the province of the probate court to bring to its aid the full equitable powers with which as a superior court it is invested to insure that income beneficiaries do not profit at the expense of the remaindermen. (*Estate of Eilert*, 131 Cal.App. 409, 416-417 [21 P.2d 630].)

In the case *sub judice,* the estate's gross income was $160,-602.92. The income tax thereon, but for the utilization of the administration expense deduction, would have been $120,-378.11. The income tax saving resulting from the utilization of the expenses of administration as a deduction on the income tax return was $101,649.95. The $76,000 in dividends on Mrs. Bixby's stock amounted to 47.32168 per cent of the estate's gross income, giving her that proportionate share of the above tax saving. However, the depletion in the residue resulting from the nonavailability of administration expenses as estate tax deductions was $58,932.44. As has been pointed out, to prevent unjust enrichment at the expense of the remaindermen, 47.32168 per cent of this depletion should therefore be charged to Mrs. Bixby who has received the benefit of the tax saving. This charge amounts to $27,887.41. In restoring this amount to corpus, Mrs. Bixby still retains a substantial tax benefit for herself. But she obtains this advantage now solely at the expense of the federal government, while the residuary beneficiaries are in no worse position than if the deduction had been taken for estate tax purposes. The ultimate result is salutary in that the reciprocal and correlative rights of all the takers under the will remain vested in the posture prescribed by the state rules governing rights and interests in the estates of decedents, undisrupted and un-

disturbed by the transient vagaries of the federal income tax laws.

The order dated May 2, 1955, is reversed and the trial court is directed to enter a new order for preliminary distribution in accordance with the views herein expressed. The testamentary trustees are awarded their costs on appeal.

Moore, P. J., concurred.

Mr. Justice Ashburn, deeming himself disqualified, did not participate herein.

A petition for a rehearing was denied April 24, 1956. Ashburn, J., did not participate therein. The application of petitioner and appellant for a hearing by the Supreme Court was denied May 23, 1956.