418 P.2d 273

W. D. SCOGINGS and Laura Scogings, his wife, Plaintiffs-Respondents,

v.

Juel H. ANDREASON and Janet W. Andreason, his wife, Defendants-Appellants.

No. 9787.

Supreme Court of Idaho.

Sept. 21, 1966.

A. A. Merrill, Idaho Falls, for appellants.

Albaugh, Bloem, Smith & Pike, Idaho Falls, for respondents.

SMITH, Justice.

Respondents brought this action seeking to foreclose a real property purchase price mortgage, to reform the description and quiet title to the real property, and for incidental relief. Appellants cross-claimed, seeking rescission of the contract under which respondents agreed to sell and appellants agreed to purchase the property. The facts are hereinafter detailed.

February 24, 1962, appellants contracted in writing to purchase from respondents 320 acres of land situate in Butte County, for the purchase price of $18,500. The contract provided that respondents would convey the land by quitclaim deed and that appellants would pay the purchase price by giving respondents' real estate broker, a Mr. Jones, a check for $1,000, and by giving respondents a secured promissory note for $17,500. The

contract described certain real property and referred to it as "a desert entry, and title is vested presently in the U. S. Government, pending proof on entry." 43 U.S.C. §§ 321–323, 325, 327–329, 43 C.F.R., Ch. II, subpart 2226.

The documents provided by the contract were exchanged on February 26, 1962. Respondents' promissory note provided that the $17,500 balance of purchase price be paid in seven installments of $2,500 each, plus interest on the unpaid balance of 6% per annum, on January 1st of each year, beginning in 1963. The note further provided:

"* * *; if any of said instalments are not so paid, the whole·sum of both principle and interest to become immediately due and collectible at the option of the holder of this note.

"In case suit or action is instituted to collect this note, or any portion thereof [the buyers] promise to pay such additional sum as the court may adjudge reasonable as attorney's fees in said suit or action."

The ·note was secured by a real property mortgage executed by appellants on February 26, 1962. The mortgage not only encumbered the "desert entry" land, but other real property owned by ·appellants. The mortgage also provided for payment of reasonable attorney's fees in case of foreclosure and sale of the hypothecated realty.

February 27, 1962, appellants stopped payment. of the $1,000 check made payable to Mr. Jones, claiming the right to rescind the contract. Appellants' reasons for the attempted rescission were the following instances of alleged fraud: (1) that respondents had received their. interest in the "desert entry" land from one Lewis H. Burgess and wife by quitclaim deed, dated February 17, 1962; that on February 26th when respondents quitclaimed that land to appellants, the Bureau of Land Management.had not approved the transfer from Burgess to respondents, which fact respondents allegedly did not disclose to appellants, and that therefore, appellants got less title than they bargained for; (2) that both re-

spondents and their agent, Mr. Jones, allegedly failed to disclose to appellants that the "desert entry" land was encumbered by a $2,000 purchase money mortgage in favor of Burgess as a result of the above-mentioned transaction; (3) alleged failure of full legal title to the premises in respondents; and (4) alleged failure of Jones to tell appellants that he was acting as respondents' agent in the transaction.

Ever since their attempted rescission, appellants have paid nothing under the transaction and have treated it as totally void; they have not attempted to take possession of the land nor to claim any ·interest ·therein. Respondents, in order to protect· their security under the mortgage and note, found it necessary late in 1962, to take possession of the land in order to ·make sufficient improvements thereon so as to·avoid total forfeiture to the government ´under the Desert Land Act. While· in·possession, respondents made considerable expenditures in improving the land, irrigated· it,´ and in 1964, through lessees, began farming· it, retaining the proceeds. ·By March 19, 1964, respondents had shown sufficient proof of entry of 240 acres which entitled them to a U. S. Government patent of that date and which gave them legal title to such portion of the "desert entry" land. The remaining 80 acres have been forfeited to the United States for failure of either respondents or appellants to make final proof thereon as required by the federal desert entry laws. ·

After appellants failed to pay the first installment due on the secured promissory note, respondents brought this action on April 3, 1963, to foreclose the mortgage; also to reform the mortgage; both parties have agreed that the mortgage contained erroneous land descriptions and should be reformed if it is treated as still in effect. Respondents prayed judgment for $17,500 plus interest, $1,750 attorney's fees, costs, foreclosure sale of the property, and other just and equitable relief.

Appellants answered, contending that they had validly rescinded the contract on grounds of fraud and that the quitclaim

deed had failed to give them legal title (which at the time of the answer was in the United States and at time of trial, partially in respondents). Just prior to the trial appellants also counterclaimed for damages caused by the alleged fraud, and tendered to respondents' attorney a quitclaim deed to the "desert entry" land "to remove any clouds" from the legal title possessed by respondents.

█ The cause was heard by the court sitting without a jury. Findings of fact and conclusions of law were waived by the parties. In its memorandum decision the court found that appellants did not have a valid ground for rescission, and that they had breached the contract without legal excuse. The record supports this finding. The evidence shows that appellants knew about Jones' agency, the Burgess mortgage, and the true state of respondents' title.

█ As to the first ground of alleged fraud, the evidence shows that the Bureau of Land Management, on September 27, 1962, approved the Burgess-Scogings assignment or transfer of the "desert entry." Burgess and wife accomplished the assignment by quitclaim deed in favor of Scogings and wife, Mr. Scogings by his affidavit filed with the Bureau, having shown that he was qualified to accept the assignment and hold a desert land entry. Mr. Bedke, the attorney who handled such transaction, testified that he always accomplished an entryman's assignment by the method of quitclaim deed of the assignor entryman, and the affidavit of qualification of the assignee; that he did not know of any instance of refusal by the government to approve an assignment where such procedure was followed. Hence, lack of governmental approval of the prior transfer or assignment at the time the quitclaim deed was executed, did not prejudice appellants; therefore, such did not constitute grounds for rescission.

Since the record supports the finding that appellants breached the contract without legal excuse, thereby supporting the awarding of relief to respondents, the only remaining question for determination is whether the trial court erred in granting respondents the relief which it did.

The court did not grant respondents the relief they prayed for in their complaint but instead awarded them damages and quieted title in them to the "desert entry" land. The court found that respondents had not been damaged by having to keep the land; but that they had been damaged $1,000 by appellants' failure to honor their $1,000 check made payable to Mr. Jones. Since the court assumed that this check was for Jones' services to respondents, the court presumed that the respondents were forced to assume this obligation when appellants stopped payment of the check. The court also awarded respondents $1,000 attorney's fees and $243.54 costs. Thus, the court found in Paragraph 4 of its judgment and decree:

> "4. That there is now due, owing and unpaid, from the defendants and cross-complainants, Juel H. Andreason and Janet W. Andreason, his wife, to the said plaintiffs and cross-defendants, W. D. Scogings and Laura Scogings, his wife, the sum of One thousand and no/100 ($1,000.00) Dollars, damages, the sum of One Thousand and no/100 ($1,000.00) Dollars, attorneys' fees, and the sum of Two Hundred forty-three and $^{54}/_{100}$ ($243.54) Dollars, costs of suit, amounting in all to the sum of Two thousand, two hundred forty-three and $^{54}/_{100}$ ($2,243.54) Dollars, together with interest thereon at the rate of six percent (6%) per annum from and after the date hereof; that said plaintiffs and cross-defendants, W. D. Scogings and Laura Scogings, his wife, have judgment against said defendants and cross-complainants, Juel H. Andreason and Janet A. Andreason, his wife, in the said total sum of Two thousand, Two hundred forty-three and $^{54}/_{100}$ ($2,243.54) Dollars, together with interest at six percent (6%) per annum from date hereof."

Finally, the court quieted title in appellants to three tracts of their own land, title to

which had been encumbered by the mortgage, but subjected the same to a judgment lien in the amount of the judgment ($2,-243.54). Appellants' only real contention is that the district court erred in granting the type of relief which it did.

■ Appellants first contend that the court had no jurisdiction to award damages to respondents because in their complaint they did not pray for damages. Considering the nature of the transaction, we are of the view that the court properly awarded damages.

■ A quitclaim deed does not convey after-acquired title as does a grant deed. I.C. §§ 55–604 and 55–605; Brenner v. J. J. Brenner Oyster Company, 48 Wash.2d 264, 292 P.2d 1052 (1956); Soares v. Steidtmann, 130 Cal.App.2d 401, 278 P.2d 953 (1955); Dowse v. Kammerman, 122 Utah 85, 246 P.2d 881 (1952); Lodge v. Thorpe, 120 Mont. 226, 181 P.2d 598 (1947). A quitclaim deed however, conveys whatever interest legal or equitable, which the grantors possess at the time of the conveyance, including rights inchoate which later may ripen into a vested estate. Soares v. Steidtmann, supra; Smith v. Long, 76 Idaho 265, 281 P.2d 483 (1955); 26 C.J.S. Deeds § 118; 73 C.J.S. Public Lands § 227. Respondents' quitclaim deed therefore, vested in appellants the equitable title to the 240 acres of the "desert entry." Appellants' mortgage, encumbering the land, in favor of respondents, was also valid as between the parties, even though legal title was acquired after the lands were mortgaged. Bashore v. Adolf, 41 Idaho 84, 238 P. 534, 41 A.L.R. 932 (1925); 73 C.J.S. Public Lands § 223, p. 872.

■ Thus, respondents were seeking a remedy requiring specific relief. In order to prevail in their foreclosure suit, respondents would have had to convey legal title to appellants. Cf., Boesiger v. Freer, 85 Idaho 551, 381 P.2d 802 (1963). Equity would then have declared the promissory note due and ordered foreclosure of the mortgage. In this case however, it was impossible for respondents to give appellants title to all the land described in the quitclaim deed because 80 acres of it had reverted to the government. Thus, equity would have justified denial of specific relief. Texas Military Institute v. Sun Oil Co., 112 S.W.2d 329 (Tex.Civ.App.1937); Elmore v. Stephens-Russell Co., 88 Or. 509, 171 Pac. 763 (1918); 81 C.J.S. Specific Performance § 30. Also see Dohrman v. Tomlinson, 88 Idaho 313, 322, 399 P.2d 255 (1965), for the proposition that if a contract is to be enforced at all, it must be enforced as the parties have made it.

■ The record further shows that after respondents retook possession of the land they spent over $26,000 improving it and that as a result the 240 acres was worth $25,000 at the time of trial of this cause. Equity will not grant specific relief where the result could be harsh or oppressive on a party. Suchan v. Rutherford, 90 Idaho 288, 410 P.2d 434 (1966) and authorities cited therein. The Suchan case further holds (410 P.2d at 443) that specific performance of a land contract is not a matter of right but rests in the sound discretion of the trial court. The trial court did not abuse its discretion in refusing the specific relief prayed for in the complaint, and in awarding damages, especially since there is no evidence that damages failed to accord respondents a plain, speedy, and adequate remedy at law. Respondents cannot complain, because they did not cross-appeal; and appellants cannot complain because they never sought specific relief in the court below.

Lloyd v. Anderson, 39 Idaho 314, 227 P. 32 (1924), cited by appellants, supports our holding herein. In that case the vendee had given the vendor a promissory note in return for real property and had defaulted in his payments. The vendor retook possession of the land, then sued to collect the balance due under the note. The court held that he could not collect such balance due while he had the property; his correct remedy was damages, in that case liquidated damages as provided by the contract.

The finding by the trial court that the sellers were damaged in the sum of $1,000 is sustained by the evidence. The purchase agreement itself provides that if the buyers fail to make the payments when due, the $1,000 "earnest money" should be forfeited as liquidated damages.

Since the right to damages appears on the face of the sale and purchase agreement, appellants are not prejudiced by respondents' failure specifically to plead them. The pleadings must conform to the proof. Rule 15(b) I.R.C.P.

Appellants also contend that the trial court could not award attorney's fees in this action. This is erroneous. The promissory note provided that "in case suit or action is instituted to collect this note, or any portion thereof [the buyers] promise to pay such additional sum as the court may adjudge reasonable as attorney's fees in said suit or action." Respondents were forced to bring the action on the note because of appellants' unjustified failure to perform under the contract. Although the trial court awarded damages rather than specific relief under the note, it did find for respondents, and we entertain the view that the court correctly resolved the issue under the circumstances.

Appellants cite National Motor Service Co. v. Walters, 85 Idaho 349, 361, 379 P.2d 643 (1963), and cases cited therein, for the proposition that attorney's fees are not recoverable unless provided for by statute or by contract of the parties. This line of authority is clearly inapplicable to the case at bar because the contract did provide attorney's fees.

Appellants also cite Dawson v. Eldredge, 84 Idaho 331, 372 P.2d 414 (1962), and Willes v. Palmer, 78 Idaho 104, 298 P.2d 972 (1956). See also of similar import Guyman v. Anderson, 75 Idaho 294, 271 P.2d 1020 (1954). Those cases are also distinguishable from the one at bar. In the first place, none of these cases involved a contract between the parties providing for attorney's fees; each involved an attempted foreclosure of a statutory mechanic's or materialman's lien created under I.C. § 45–501. The two cases cited by appellants hold, in effect, that a person suing to foreclose a mechanic's or materialman's lien cannot recover attorney's fees under I.C. § 45–513 unless he prevails in his action. Alternate relief is not available to a party suing to foreclose a mechanic's or materialman's lien; so, the rule that entitlement to attorney's fees is incident to foreclosure of the lien is not in conflict with our holding herein. Certainly if respondents had not prevailed in the action below, they would not have been entitled to attorney's fees.

Appellants' sole objection to the awarding of costs to respondents is based on the assumption that respondents were not entitled to prevail below. That assumption being erroneous, appellants' argument against the award of costs is without merit.

Judgment affirmed. Costs to respondents.

McFADDEN, C. J., and McQUADE, TAYLOR and SPEAR, JJ., concur.