[Civ. No. 6093. Third Appellate District.—January 12, 1939.]

R. E. MAXWELL et al., Respondents, v. T. H. CARLON, Appellant.

Lafayette J. Smallpage and Forrest E. Macomber for Appellant.

E. T. Taylor, J. W. Hawkins and Hawkins & Hawkins for Respondents.

PULLEN, P. J.—Plaintiffs brought an action against T. H. Carlon, Joseph M. Brunette, Roy O. Heisel, and certain fictitious defendants to quiet title to the mineral rights in certain lands belonging to defendant Carlon. From a judgment in favor of plaintiffs, defendant Carlon appeals.

T. H. Carlon was the owner of large tracts of land lying in the counties of Stanislaus, Tuolumne and Mariposa. Dr. R. E. Maxwell and Roy O. Heisel wished to acquire the mineral rights in these lands, and Heisel undertook to obtain from Carlon the right to develop these lands for which Dr. Maxwell was to advance the money necessary therefor, in return for which he was to receive an undivided two-thirds interest in the lease, and Heisel was to retain a one-third interest. Accordingly on December 6, 1934, Heisel and Carlon met by arrangement in Merced, where Carlon, for $1,000, signed a lease which had been drafted by Heisel, granting to him the mineral rights, and water rights necessary to the operation of mines. This agreement gave to Heisel a right to prospect for minerals and develop the property for mining purposes but did not specifically describe the property other than the general description ''all properties in Stanislaus, Tuolumne and Mariposa counties on record as being owned by me, T. H. Carlon on this date''. The agreement further provided ''the descriptions of the

individual properties to be supplied within thirty days from this date to Roy O. Heisel, and same to be incorporated with the body of this contract; and also provided "any properties to date owned by me whatsoever in lease, should such revert back to me, T. H. Carlon, shall immediately become part of this contract". Heisel therein agreed to pay Carlon "twenty per cent of whatever profit he (Heisel) received direct for himself".

After this agreement was signed Heisel took it to Dr. Maxwell, who submitted it to his attorney, J. W. Hawkins of Modesto. Mr. Hawkins told Dr. Maxwell the contract was not satisfactory, and that Heisel should obtain definite descriptions of the property to be leased, and to bring Mr. Carlon to his office in Modesto on the Saturday following to execute a more formal document. On that day Mr. Carlon and Mr. Heisel went to the office of Mr. Hawkins where more definite descriptions were taken from the tax rolls of the counties in which Mr. Carlon's property lay, and a new lease prepared.

This document purported to convey the same property as that referred to in the original draft. When, however, the lease was read to Mr. Carlon he stated he did not want to include the Ivite sheep ranch, the Coulter grain field, the McCormick property and the Woofling property. These exceptions were thereupon set forth in the lease. Mr. Carlon then stated that perhaps the assessors of the counties might have included property in the tax bills, from which the descriptions set forth in the lease were obtained, which he did not own, and Mr. Hawkins thereupon inserted the following:

"If any of the land heretofore described does not legally belong to me, the undersigned, then such land is excluded from the terms of this agreement."

Mr. Hawkins then asked Carlon if all the lands were his separate property, and he replied in the affirmative, except as to the Pino Blanco land, which was community property. Mr. Hawkins then dictated the following:

"All of the land herein described in my separate property except a piece of land containing about 160 acres, and known as the Pino Blanco land . . ."

As a final exception Mr. Carlon wanted to exclude any lands within the Yosemite National Park, which was done. This lease was then read to Mr. Carlon, and was then duly executed. Some time thereafter Heisel assigned to Dr. Max-

well an undivided two-thirds interest in the lease, and later, in May, 1935, Heisel sold and assigned his undivided one-third interest to R. V. MacBride, one of the plaintiffs herein.

In February, 1936, Carlon executed a conveyance of the mining rights in the Pino Blanco property to one Joseph M. Brunette. In June, 1936, Brunette conveyed to Roy O. Heisel, all of his interest in the Pino Blanco land, and Heisel began to prospect thereon, which precipitated the present action.

It is here the contention of appellants that by virtue of the fact Pino Blanco was community property it was expressly excepted from the agreement of December 8th by the provision "If any land . . . does not legally belong to me. . . . " It was also claimed that if Pino Blanco was not excepted by that provision then by reason of the ambiguity therein, parole evidence should have been admitted to explain the meaning thereof.

Appellants urge the trial court erred in holding that the Pino Blanco ranch was included in the December contract, and in further holding that even if the Pino Blanco ranch was excluded it had passed to plaintiffs herein by virtue of an after-acquired title of grantor Carlon. It seems to be the claim of appellants that inasmuch as the Pino Blanco property was community property it was thereby expressly excepted from the lease.

The answer to that contention is to be found in the construction of section 172a of the Civil Code. The Pino Blanco property was acquired in May, 1919, two years after the enactment of section 172a of the Civil Code. That section provides:

"The husband has the management and control of the community real property, but the wife, either personally or by duly authorized agent, must join with him in executing any instrument by which such community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed, or encumbered; . . . No action to avoid any instrument mentioned in this section, affecting any property standing of record in the name of the husband alone, executed by the husband alone, shall be commenced after the expiration of one year from the filing for record of such instrument in the recorder's office in the county in which the land is situate. . . ."

Here it is admitted that Carlon executed a grant deed of community property without his wife joining therein, but it is also clear that more than a year has expired and no action has been brought by the wife to set aside the deed.

In *Schelling* v. *Thomas,* 96 Cal. App. 682 [274 Pac. 755], the court held that the provisions of section 172a of the Civil Code as it existed in 1922, made the instrument voidable and not void, and at the instance of the wife only. In *Rice* v. *McCarthy,* 73 Cal. App. 655 [239 Pac. 56], the question was considered at some length, and the same conclusion, that the transfer is not void but merely voidable, was reached.

In *Mark* v. *Title Guarantee etc. Co.,* 122 Cal. App. 301 [9 Pac. (2d) 839], the husband assigned a contract for the purchase of real property to a purchaser for value, who was ignorant of the marriage relation between the assignor and plaintiff, his wife. Within one year the wife brought an action to set aside the assignment on the ground of the fraud practiced by her husband. The purchaser was declared to be an innocent purchaser for value. In discussing the case the court considered the effect of granting the wife relief and held that the setting aside of the assignment would not in fact restore any title in the wife but that it would revert the legal title to the husband. This the court refused to do as it would restore property to the husband at the expense of one who had been deceived by his false representation that he was unmarried, as thereby the husband would be profiting by his own wrong. Other cases holding that the wife, under section 172a of the Civil Code, as amended in 1917, had no vested interest in the community property, are *McKay* v. *Lauriston,* 204 Cal. 557 [269 Pac. 519]; *Roberts* v. *Wehmeyer,* 191 Cal. 601 [218 Pac. 22]; *Stewart* v. *Stewart,* 199 Cal. 318 [249 Pac. 197]; *Riley* v. *Gordon,* 137 Cal. App. 311 [30 Pac. (2d) 617]. It would, therefore, appear that the appellant was the legal owner of the property in question on the date of the execution of the lease, and that the absence of the signature of the wife to the grant did not render the same void but merely voidable at her option.

Another error assigned by appellant is that the court erred in refusing to permit evidence of a conversation between Carlon and Heisel at the time of the execution of the first memorandum. In this we find no error, for that memorandum was not at issue in this case. It had been su-

perseded by a more formal lease and it clearly appears in evidence that Carlon and Heisel had expressly agreed at that time that the instrument of December 6th was to be considered as null and void.

It is not necessary to cite authority in support of the well-known rule that under these circumstances things said and done prior to the execution of a contract would be inadmissible to change or modify the terms of a subsequent agreement.

■ Furthermore, the wife of Carlon, after the execution of this lease, by a quitclaim deed, conveyed to him any interest she had in the Pino Blanco property which enured to the benefit of respondents. Section 1106 of the Civil Code provides:

"Where a person purports by proper instrument to grant real property in fee simple, and subsequently acquires any title, or/claim of title thereto, the same passes by operation of law to the grantee, or his successors."

■ A deed which purports to convey a fee, passes after-acquired title regardless of any intervening deed to another grantee with notice of the prior deed (*Merrill* v. *Clark*, 103 Cal. 367 [37 Pac. 238]), and this rule applies where the grantor, at the time of the execution of the deed, owned an undivided interest (*Emeric* v. *Alvarado*, 90 Cal. 444 [27 Pac. 356]), and it would even apply where the grantor had no title whatsoever. (*Merrill* v. *Clark, supra.*) The judgment and finding are amply supported by the evidence.

The judgment should be affirmed, and it is so ordered.

Thompson, J., concurred.