[Civ. No. 13979.   First Dist., Div. One.   Feb. 25, 1949.]

MADELEINE LANDAU ROSENTHAL, Respondent, v. JOHN ARTHUR LANDAU, Appellant.

Harold L. Levin for Appellant.

Sugarman & Bernheim, Irving C. Sugarman and Louis L. Bernheim for Respondent.

PETERS, P. J.—Plaintiff, Madeleine Landau Rosenthal, brought this action against her former husband, John Arthur Landau, to quiet her title to a piece of improved real property in San Francisco. Defendant answered and cross-complained, praying that plaintiff be declared a constructive trustee of the property, and that she be compelled to convey it to him. The trial court determined all issues in favor of plaintiff and against defendant, and entered its judgment quieting plaintiff's title to the property. From that judgment, on a settled statement of facts, defendant appeals.

The facts are not in dispute. On March 14, 1932, by contract, appellant purchased a home through the Department of Veterans Affairs of the State of California for a total purchase price of $4,992 to be paid off at the rate of $30 a month over a period of 20 years. Appellant and respondent were then husband and wife, and, although then living separate and apart and divorce proceedings were pending, were on friendly terms. Respondent testified that appellant came to her and told her that he had arranged to purchase a home but could not afford to make the monthly payments; that, if she would pay him $200 and make the payments on the house, she could have the home in settlement of their property rights. Appellant testified that he told respondent that she could live in the house, and make the payments to the Veterans Administration in lieu of paying rent to him; that he would give her a deed to the property which she was not to record; that respondent was to have no title to the property until after appellant's death; that during his lifetime appellant was to have complete ownership, including the rights to borrow, sell, or mortgage the premises. Three independent witnesses testified that appellant had told them that he had given the property to respondent. The trial court resolved this conflict

in favor of respondent, and no challenge is made as to the sufficiency of the evidence to support this, or any other finding.

On September 6, 1932, appellant received from respondent a check for $200 and delivered to her a quitclaim deed to the property. In addition, respondent made a down payment upon a $500 note given to the sellers of the house. All payments to the Veterans Administration were made by respondent. She also paid all taxes and all insurance premiums, although the property was assessed to appellant and the insurance was in his name. Respondent has continuously occupied the house from March, 1932, down to the present date. When the parties were divorced the property here involved was not mentioned in either the interlocutory or final decrees.

After the parties were divorced, respondent remarried, and, under date of December 13, 1942, appellant executed and delivered to her a second quitclaim deed to the premises under her new married name. Neither of these deeds was recorded until 1947.

Appellant made no claim to the premises until 1947. In that year he attempted to secure a $5,000 loan from a San Francisco bank secured by a deed of trust on the premises. Before this loan was released from the title company respondent recorded her second quitclaim deed. This occurred two days after appellant had recorded his deed and deed of trust. On that date the title company had already paid $1,479.60 to the Veterans Administration, that being the balance due on the purchase price. The parties to this proceeding then agreed that the title company should return to the bank the balance of the $5,000 still in its possession, and it has been further agreed that whoever wins this litigation shall assume and pay the $1,479.60 already advanced by the bank.

On this evidence the trial court quieted the title of respondent to the property. ■ Appellant first points out that, through the bank, he paid off the Veterans Administration, and recorded its deed to him and executed and recorded a deed of trust to the bank before respondent recorded her quitclaim deed. He then points out that a quitclaim does not, in this state, pass an after-acquired title, citing section 1106 of the Civil Code, and contends that he had the legal right to acquire the fee title after executing the quitclaim deeds. This argument is not sound. At the time the quitclaims were executed and delivered, appellant had an equitable interest in the property and the right to complete his title by paying off the balance of the purchase price. That equitable

interest and the rights incident thereto, were conveyed by the quitclaim deeds to respondent. There is no doubt, of course, that a quitclaim passes whatever interest, legal or equitable, that the grantor then possesses. This being so, the appellant could not defeat that transfer by exercising rights already conveyed to respondent.

The dates upon which the various deeds were recorded are false factors in the case. All parties now involved were aware of the title dispute and no bona fide purchaser is involved. (Civ. Code, § 1217.)

The main question involved on this appeal is whether, under certain sections of the Military and Veterans Code, the conveyance by appellant to respondent was void and illegal. Admittedly, neither appellant nor respondent secured the written consent of the Veterans Administration to the transfer from appellant to respondent as required by the sections in question.

There can be no doubt that the statutes involved require the consent of the Veterans Administration to any transfer by the veteran of his interest in the contract of purchase. The Military and Veterans Code sets forth, in some detail, what provisions shall be inserted in the contract between the veteran and the state. The act has always contained a provision relating to interest charges. As originally enacted in 1921 (Stats. 1921, p. 816, ch. 519, § 6), and as placed in the Military and Veterans Code in 1935 (§ 820), that interest rate was fixed at 5 per cent per annum. In 1945 (Stats. 1945, p. 720, ch. 255, § 1), and again in the extra session of 1946 (Stats. First Ex. Sess. 1946, p. 69, ch. 47, § 1), the section was amended to permit the board to fix the interest yearly at a rate between 4 per cent and 2½ per cent per annum. In 1947, there was added section 820.5 to the code (Stats. 1947, p. 899, ch. 336, § 1). It reads as follows:

"The provisions of Section 820, relative to the rate of interest to be charged to veteran purchasers do not apply to assignees of such purchasers who are not veterans, but as to such assignees the rate of interest shall be fixed by the board, compounded at periods fixed by the board or department.

"The action of the board or department in refusing to permit any assignments except as provided in this section is hereby ratified and confirmed, it having at all times been the intent of the Legislature that Section 820 apply to veteran purchasers only."

Section 821, since its adoption in 1935, reads as follows: "The board in each individual case may specify the terms of the contract entered into with the purchaser, but no property sold under the provisions of this chapter shall, voluntarily or involuntarily, by operation of law or otherwise, be transferred, assigned, encumbered, leased, let or sublet, in whole or in part, without the written consent of the board, until the purchaser has paid therefor in full and has complied with all the terms and conditions of his contract of purchase." (See, also, § 987.1, added in 1943, containing a similar provision.)

It should be noted that, although the key section—821— was not enacted until 1935, which was subsequent to the execution and delivery of the first quitclaim deed in 1932, in the original statute—Stats. 1921, p. 815, ch. 519—in § 6, and p. 816, there was a section containing almost the same wording. For the purposes of this appeal, the two sections have the identical legal effect, so it is immaterial which governs.

It is the theory of appellant that, because written permission of the Veterans Administration was not received, the quitclaims were void, and the transaction was against public policy and illegal, and should not be enforced by the courts.

It may be conceded that, if section 821, *supra,* and the other sections referred to above, were passed for the protection of the public and not simply for the protection of the vendor, any contract in violation thereof would be illegal and void, and unenforceable. The difficulty with the position of appellant is that it has already been held that such provisions, whether they appear in a contract or in a statute, are not designed to protect the public, but are for the protection of the vendor only, and do not affect the validity of transfers made between the purchaser and his transferee. Two relatively recent cases not cited in the briefs of either party are decisive on this issue.

The first case is *Johnston* v. *Landucci,* 21 Cal.2d 63 [130 P.2d 405, 148 A.L.R. 1355]. That case involved the validity of an assignment by Landucci of a contract to purchase land. The contract between the original seller and purchaser contained a clause to the effect that "Neither this contract nor any interest therein shall be assignable without the written consent of the seller." (P. 67.) The court held that an assignment without consent was not void, but was valid between the parties, subject to the rights of the vendor. In so holding, the court stated (p. 67):

"Although there are no cases directly in point in California, the overwhelming weight of authority in other jurisdictions is to the effect that provisions against assignment, such as that contained in paragraph 17 of the Miller & Lux contract, are for the benefit of the vendor only, and in no way affect the validity of an assignment without consent as between the assignor and assignee. In other words, the interest of the assignor in the contract passes to the assignee, subject to the rights of the original seller. This is the rule set forth in the Restatement of the Law of Contracts. Section 176 reads as follows: 'A prohibition in a contract of the assignment of rights thereunder is for the benefit of the obligor, and does not prevent the assignee from acquiring rights against the assignor by the assignment or the obligor from discharging his duty under the contract in any way permissible if there were no such prohibition.'

"The rule that such provisions are for the benefit of the seller and in no way affect the validity of an assignment as between the assignor and assignee is the rule adopted by the United States Supreme Court (*Portuguese-American Bank* v. *Welles*, 242 U.S. 7 [37 S.Ct. 3, 61 L.Ed. 116]), and is the rule approved by Williston in his work on Contracts (Williston on Contracts, Revised ed., vol. II, § 422). Although there are no cases in California dealing directly with the assignment of choses in action in violation of a provision against assignment, there are several cases which hold that the prohibition in a lease against assignment is for the benefit of the lessor, and that an assignment without consent passes the interest of the assignor to the assignee. [Citing four California cases.]'"

This case, of course, dealt with a nonassignability without consent clause in a contract. In the second case—*O'Neill* v. *O'Malley*, 75 Cal.App.2d 821 [171 P.2d 907]—this court held that the same rule applies to the precise statute here involved. That case was an action to quiet title to a contract of purchase and to certain property described therein. In 1937, O'Malley had purchased the property, on an installment contract, from the Veterans Administration. In 1943, while divorce proceedings were pending, O'Malley assigned to his wife Charlotte, as part of a property settlement, all of his interest in the contract and property. This assignment was submitted to, and approved by, the Veterans Administration. Subsequent to this assignment, and until her death in 1944, Charlotte made all payments called for by the contract. Prior

to her death, Charlotte and O'Malley entered into a written contract whereby Charlotte assigned to O'Malley and herself, as joint tenants, all of her interest in the contract and property. This assignment was not submitted to, or known or approved by, the Veterans Administration, nor was it acknowledged or drawn in the form prescribed by the Veterans Administration for the transfer of property in joint tenancy. Following the death of Charlotte, a dispute arose between O'Malley and the executor of Charlotte's estate over who was entitled to the property. The Veterans Administration, as in the instant case, decided to take a neutral position and to let the parties litigate the issue. The executor of Charlotte's estate then brought an action to quiet her title to the property, and O'Malley cross-complained for the same relief. Judgment went for O'Malley. On appeal the main contention of the executor was that the assignment was void and illegal because the consent of the Veterans Administration had not been secured as required by section 821 of the Military and Veterans Code. This court held that the ruling in *Johnston* v. *Landucci, supra,* was controlling. In so holding the court stated, after noting the language of section 821 (p. 826): "There can be no doubt at all that under these sections [§§ 821 and 987.1] there is a limitation against assignment written into every board contract by operation of law even if not expressed. But it is quite clear that if private individuals incorporated into their contract the exact language of the two statutes, under the Landucci case, such language would be interpreted to be for the sole benefit of the vendor and would in no way affect the validity of the assignment between the assignor and assignee. It would seem that that language when used in a statute should not be given a different meaning. What appellants have overlooked is that there is a strong public policy in favor of the free transferability of property, and that such provisions have quite uniformly been interpreted as being for the sole benefit of the vendor and do not affect the rights *inter se* of the assignor and assignee. The board is not a party to this action and its rights are not involved. The Legislature, in the absence of compelling language to the contrary, must be held to have meant by the language used exactly what private individuals would have meant had they used the language. Words do not acquire a peculiar and different meaning because used in a statute."

The Supreme Court denied a petition for hearing. The ruling in this case, dealing as it does with the identical statute

here involved, is conclusive in the present case. The addition of section 820.5 to the Military and Veterans Code in 1947 (quoted *supra*) in no way affects the rule of the *O'Neill* v. *O'Malley* case. That section affects only the rights of assignees against the Veterans Administration, and in no way affects the rights of the assignee and assignor between themselves, or the rights of the public. The Veterans Administration is not a party to this proceeding. Whatever rights it may have against the assignee are not here involved.

The judgment appealed from is affirmed.

Ward, J., and Bray, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 25, 1949.