[Civ. No. 1239. Fifth Dist. Nov. 2, 1970.]

KLAMATH LAND & CATTLE CO.,
Plaintiff, Cross-defendant and Respondent, v.
FRANK L. ROEMER, Defendant, Cross-complainant and Appellant.

## COUNSEL

Twitchell & Twitchell and Maurice F. Twitchell for Defendant, Cross-complainant and Appellant.

Goth, Dennis & Aaron and James M. Dennis for Plaintiff, Cross-defendant and Respondent.

## OPINION

**GINSBURG, J.**[*] — This action involves the title to oil and mineral interests in real property situate in Merced County. It was commenced by the present owner of the surface rights, respondent herein, who filed a complaint against appellant, and others, to quiet title to all rights in the land. All named defendants except appellant Frank L. Roemer disclaimed or defaulted. Appellant cross-complained to quiet title to an undivided one-fourth interest in the subsurface rights, and appeals from the adverse judgment of the trial court quieting respondent's title.

The case was tried upon agreed facts and documentary evidence set forth in a written stipulation filed with the court, personal appearances being waived. Numerous documents comprising the alleged chains of title of appellant and respondent are set forth in the stipulation. The ones which we deem material to the issues herein are described as follows:

| Date of Instrument | Description of Instrument | Date of Recordation |
| --- | --- | --- |
| 1. May 29, 1939 | Conditional Sales Agreement, Miller & Lux, Seller, to Roemer, Cowden and Harty, Buyers[1] | Not recorded |
| 2. March 11, 1941 | Assignment of Roemer's and Cowden's interest in above agreement to Harty[2] | Not recorded |
| 3. March 11, 1941 | Agreement of Harty to assign to Roemer and Cowden an undivided one-half interest in oil and mineral rights | Not recorded |

[*]Assigned by the Chairman of the Judicial Council.

[1]This agreement required the consent of seller before the buyers could assign the contract. Prior to the execution of any instruments purporting to affect title, seller advised buyers that they would ". . . not approve or consent to any assignment wherein separate interests are created in the land subject to the contract. The reservation of mineral rights or a fraction thereof would have this effect." Seller never did, in fact, thereafter consent to any assignment of such rights prior to its execution of a deed to the assignee. (See instrument 6, *infra.*)

[2]No mineral rights were reserved in the instrument.

| Date of Instrument | Description of Instrument | Date of Recordation |
| --- | --- | --- |
| 4. March 11, 1941 | Assignment of Harty's interest in original Conditional Sales Agreement to the Brems (See fn. 2.) | Not recorded |
| 5. September 29, 1945 | "Reservation Agreement" re one-half mineral rights, executed by the Brems to Harty[3] | February 8, 1946 |
| 6. December 11, 1945 | Deed of fee from Miller & Lux to the Brems. (See fn. 2.) | January 3, 1945. |

Respondent purchased the fee, without exception as to mineral and oil rights, from the successors to the Brems, on November 7, 1960; it claims title under the deed from Miller & Lux to the Brems, recorded January 3, 1945 (instrument 6, *supra*).

Appellant claims title as a successor in interest to Harty under the "Reservation Agreement" recorded February 8, 1946 (instrument 5, *supra*). Although this instrument was recorded after the deed vesting title in the Brems (instrument 6, *supra*), it was executed on September 29, 1945, before the execution of the Miller & Lux deed vested legal title in the Brems on December 11, 1945.

The trial court found that the "Reservation Agreement" was a quitclaim deed; that at the time it was executed the grantors, Brems, had no title to the realty; and that as a quitclaim deed the instrument could not convey the Brems' after-acquired title to Harty. Consequently it found Harty's

---

[3] The Reservation Agreement provides: "WHEREAS, J. F. HARTY AND ANNE HARTY, his wife, did heretofore grant and assign unto the undersigned [the Brems] all of their right, title and interest in and to the real property hereinafter described; and,

"WHEREAS, the said J. F. HARTY AND ANNE HARTY, his wife, did reserve from the said real property an undivided one-half interest in all oil, gas and/or minerals in and under said lands,

"Now, THEREFORE, the undersigned [the Brems] do hereby grant and acknowledge that the said J. F. HARTY AND ANNE HARTY, his wife, have reserved and do hereby reserve for themselves or their successors and assigns, an undivided one-half interest in and to all of the oil, gas and/or minerals in and under the said real property hereinafter described, together with the right of the said J. F. HARTY AND ANNE HARTY, his wife, or their successors, assigns, lessees and legal representatives at all times to enter on the following described real property and take all of the usual. necessary or convenient means to bore wells, make excavations and to remove all the oil, gas and/or minerals herein reserved . . . ."

conveyance to appellant conveyed nothing, and quieted title against appellant.

In construing the provisions of the Reservation Agreement, we are confronted with two questions: Was the Reservation Agreement effective as a grant deed or as a quitclaim deed; and if it was a quitclaim deed, was it sufficient to convey the grantors' after-acquired title.

■ An examination of the language of the Reservation Agreement compels the conclusion that it has the necessary characteristics of a grant deed. ■ Civil Code section 1092 provides that a grant of an estate in real property may be made by providing in substance: "I, A B, grant to C D all that real property . . . ." The essential of such a deed has long been held to be the word "grant" (*Schlageter* v. *Cutting,* 116 Cal.App. 489, 498 [2 P.2d 875]) and it appears that in California this word has been applicable to the transfer of *all estates* in real property, and not solely estates in fee simple, since some time prior to 1845. (See *San Francisco & Oakland R.R. Co.* v. *City of Oakland,* 43 Cal. 502, 505.)

■ The Reservation Agreement complies, therefore, with the essential requirement of a grant deed, in providing, in part: "the undersigned do hereby grant . . . ." Thus it constituted a grant in fee simple of the severed mineral and oil rights.[4]

■ A grant deed unquestionably transfers an after-acquired title. Civil Code section 1106 provides: "Where a person purports by proper instrument to grant real property in fee simple, and subsequently acquires any title, or claim of title thereto, the same passes by operation of law to the grantee, or his successors." (See *Maxwell* v. *Carlon,* 30 Cal.App.2d 356, 361 [86 P.2d 666].)

■ Furthermore, even if the instrument were determined to be a quitclaim deed, it would operate to pass the after-acquired title of the Brems, in the instant case. ■ As a general rule, a quitclaim deed does not operate to transfer an after-acquired title (*Taylor* v. *Coachella Valley Water Dist.,* 108 Cal.App.2d 743, 745 [239 P.2d 454]; *Estate of Wilson,* 40 Cal.App.2d 229, 232 [104 P.2d 716]), but it does pass whatever interest, legal or equitable, the grantor possesses at the time of the grant. (*Soares* v. *Steidtmann,* 130 Cal.App.2d 401, 404 [278 P.2d 953].) Thus such a deed conveys an equitable interest and the right to complete title by paying off the balance of the purchase price under a contract of sale; and where the equitable

---

[4]"It is settled in this state that an owner of the fee title to land may sever all or a part of the estate in the oil and gas from the estate in the surface. [Citations.] The estate in the oil and gas,—if of unlimited duration, as in the case at bar,—is a freehold interest, an estate *in fee,* and real property. [Citation.]" (*Carlson* v. *Lindauer,* 119 Cal.App.2d 292, at p. 302 [259 P.2d 925].)

interest of the grantor is conveyed by quitclaim deed, a later legal title vested in the grantor is deemed to be transferred. (*Rosenthal* v. *Landau*, 90 Cal.App.2d 310, 312-313 [202 P.2d 810]; *Graff* v. *Middleton*, 43 Cal. 341; see 2 Witkin, Summary of Cal. Law (1960) p. 889, and cases cited therein.)

■ Nor would the prohibition against assignment in the original conditional sales agreement (instrument 1, *supra*) affect the validity of the conveyance. A nonassignability clause is for the benefit of the vendor only. It in no way affects the validity of an assignment without the vendor's consent as between his vendee, the assignor, and a third person assignee; the interest of the assignor in the contract passes to the assignee subject only to the rights of the original seller. (*Johnston* v. *Landucci*, 21 Cal.2d 63, 67-68 [130 P.2d 405]; *Rosenthal* v. *Landau, supra*, 90 Cal.App.2d at p. 316.)

■ Thus, whether the Reservation Agreement was a grant deed or a quitclaim deed, it was an effective conveyance of both the then-equitable interest of the Brems and their after-acquired legal title as between the grantors and their grantee.

■ Having determined that the Reservation Agreement conveyed title to appellant's predecessor, the next question is whether respondent had notice thereof. This question likewise must be answered in the affirmative. The Reservation Agreement, although executed by the Brems *prior* to the acquisition of title, was recorded *after* the recordation of the Miller & Lux deed conveying title to the Brems (instrument 6, *supra*); it was therefore within the chain of title and effectively gave notice to a subsequent purchaser. (See 2 Witkin, Summary of Cal. Law (1960) § 78, p. 932.)

■ Respondent makes the further contention that it has, regardless of the original validity of its title, acquired title to all rights in the property by adverse possession. This claim is based upon facts set forth in an affidavit submitted in connection with default judgments taken below against various defendants other than appellant. The affidavit was submitted in lieu of testimony under the provisions of Code of Civil Procedure section 585, subdivision 4; it was not made part of the stipulated facts in the trial of this case or otherwise put into evidence. No evidence of adverse possession is therefore properly in the record. Even if it were, however, the law is clear that continued possession of the surface following a conveyance of mineral rights apart from the surface does not establish the possessor's rights against the legal owner of the mineral rights unless there is sufficient activity with respect to the subsurface to place the owner of mineral rights on notice of the adverse claim. (*Gerhard* v. *Stephens*, 68 Cal.2d 864, 899 [69

Cal.Rptr. 612, 442 P.2d 692].) Here, there is no evidence of such activity, and respondent's claim based on adverse possession must fail.

The judgment is reversed.

Gargano, Acting P. J., and Coakley, J., concurred.